K. F. Kelly, J.
*418 The prosecutor appeals by right an order dismissing a charge of possession of a controlled substance (codeine), a violation of MCL 333.7403(2)(b)(ii). The dismissal was based on the circuit court's earlier opinion and order that granted defendant's motion to suppress evidence. Finding no errors warranting reversal, we affirm.
I. BASIC FACTS
On March 14, 2015, Michigan State Police Trooper Everett Morris observed defendant traveling 83 miles per hour in a 70-miles-per-hour zone. Morris decided to conduct a traffic stop. Defendant was the lone occupant of the car. Morris testified that he "noticed several pill bottles along with several like whippet canisters.[1] They would be nitrous oxide ... [o]n the rear floorboard." Morris observed about a dozen of the containers. He explained: "They caught my attention because I've dealt *366 with them before where people use them and they huff 'em for a temporary high." Morris confronted defendant about the canisters:
*419 A . ... We discussed the huffing of the whippets or nitrous oxide that were in the back of the seat. I asked him, you know, when the last time it was that he used it.
Q . And what did he say?
A . He stated four days ago.
Q . Okay. And what, if anything, did you say?
A . I informed him that that stuff will kill your brain.
Q . And did he respond to your statement?
A . I believe he said I know.
Morris unsuccessfully sought defendant's consent to search the car. He nevertheless ordered defendant out of the car and searched it. In addition to the nitrous oxide whippets, Morris found a canister that can be used for inhaling nitrous oxide. Morris also found an empty bottle of codeine syrup with the name removed, as well as pill bottles with the names removed. Morris found six pills, which were determined to be codeine, located inside a jacket belonging to defendant. Morris was not concerned that defendant was actually intoxicated at the time, and he did not confiscate the whippets, the canister, or the empty medicine bottles.
On January 19, 2016, circuit court granted defendant's motion to suppress the evidence but did not specifically grant or deny defendant's motion to dismiss the case for lack of untainted evidence. The parties subsequently appeared before the court on January 21, 2016:
Mr. Meizlish [prosecutor]: Your Honor, as I imagine you recall, you entered an order suppressing the evidence in this matter.... Both sides agreed that if-you should-that you could set the matter for a trial right now.
The Court : Okay. So, everybody waives their right to a trial?
Ms. Moise [defense counsel]: Yes.
*420 Mr. Meizlish : We're just setting it for trial right now.
The Court : We'll set it right now.
Mr. Meizlish : All right. Your Honor, we are unable to proceed at this time.
Ms. Moise : Your Honor, I move for the Court to dismiss this matter.
The Court : The prosecutor being unable to proceed, the Court will dismiss the charges.
Mr. Meizlish : Your Honor, I've prepared an order.
The Court : Do you want to sign it, then-
Mr. Meizlish : Sure.
The Court : -we can be done with it? All right. We're all set.
The circuit court entered an order that provided, "I hereby grant Defendant's motion to dismiss the matter." The prosecution now appeals by right. In response, defendant argues that the appeal is moot.
II. MOOTNESS
Defendant argues that the prosecution's actions have rendered this appeal moot in keeping with People v. Richmond , 486 Mich. 29, 782 N.W.2d 187 (2010). An appellate court reviews de novo whether an issue is moot. Garrett v. Washington , 314 Mich.App. 436, 449, 886 N.W.2d 762 (2016).
In Richmond , the circuit court granted the defendant's motion to suppress the evidence because the affidavit supporting the search warrant was insufficient to establish probable cause. Richmond , 486 Mich. at 33, 782 N.W.2d 187 There, as here, the circuit court's ruling resulted in the exclusion of all of the evidence against *367 the defendant. Id . at 32-33, 782 N.W.2d 187. "The prosecutor then moved to voluntarily dismiss the case without prejudice, stating *421 that '[g]iven the Court's decision, it would make more sense for me to dismiss this case at this time since we are not able to go forward since the evidence has been suppressed.' " Id. at 33, 782 N.W.2d 187 (alteration in original). The circuit court signed an order dismissing the case without prejudice " 'on the motion of the People.' " Id. The prosecutor then appealed the circuit court's decision to suppress the evidence. Id. This Court reversed the circuit court's order and remanded the case for reinstatement of the charges against the defendant. Id . On appeal in the Michigan Supreme Court, the defendant argued for the first time that the Court of Appeals should not have considered the prosecution's appeal "because the issue was moot after the prosecution voluntarily obtained dismissal of the case." Id. The Supreme Court agreed and held "that the prosecution's voluntary dismissal of the charges rendered its appeal moot and, because a court should not hear moot issues except in circumstances that are not applicable under the facts of this case, the Court of Appeals erred by reaching the substantive issues of the prosecution's appeal." Id. at 34, 782 N.W.2d 187. The matter was moot because there was no actual controversy. The Court explained:
In this case, the prosecution's own action clearly rendered its subsequent appeal moot. After the circuit court suppressed the evidence, the prosecution moved to dismiss the charges against defendant. As a result of the prosecution's voluntarily seeking dismissal of the charges, the circuit court dismissed the charges without prejudice and any existing controversy between the parties was rendered moot. Once the charges were dismissed, an action no longer existed, and, thus, there was no longer any controversy left for the Court of Appeals to consider. Accordingly, because all the charges against defendant had been dismissed at the time of the prosecution's appeal, the Court of Appeals judgment was based on a pretended controversy that did not rest upon existing facts *422 or rights. Because a court cannot tender advice on matters that are no longer in litigation, the Court of Appeals made a determination on a mere barren right-a purely moot question, which, under this Court's precedent, it did not have the power to decide. [ Id. at 35-36, 782 N.W.2d 187 (quotation marks and citations omitted).]
We decline defendant's invitation to extend the Richmond rule to situations in which the prosecution does not specifically seek to dismiss the case. The Court's focus in Richmond was clearly on the prosecution's actions. In this case, the prosecution did not seek a dismissal. The order clearly states that it was defendant's motion. This case is distinguishable from Richmond because it does not involve a voluntary dismissal by the prosecution. Instead, defendant requested that the circuit court dismiss the charges as part of the motion to suppress.
III. SUPPRESSION
The prosecution argues that Morris had probable cause to search defendant's vehicle under the automobile exception based on defendant's admission that he committed the crime of inhaling a chemical agent, MCL 752.272, and based on Morris's observation of several nitrous oxide canisters and pill bottles on the vehicle's floorboard. The prosecution further argues that there was probable cause to arrest defendant for inhaling nitrous oxide, which would have triggered an inventory search of the vehicle and would have led to the inevitable discovery of the codeine pills. "We review *368 de novo the circuit court's ultimate ruling on a motion to suppress evidence." People v. Barbarich , 291 Mich.App. 468, 471, 807 N.W.2d 56 (2011).
The circuit court properly suppressed the evidence seized because it was the result of an unlawful search. Our Court has stated:
*423 The Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution protect against unreasonable searches and seizures. Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional. This does not mean that all searches and seizures conducted without a warrant are forbidden; only those that are unreasonable. The United States Supreme Court has carved out numerous exceptions to the general rule that warrantless searches are unreasonable using a test that balances the governmental interest that justifies the intrusion against an individual's right to be free of arbitrary police interference.....
... Each of these exceptions, however, still requires reasonableness and probable cause. [ People v. Barbarich , 291 Mich.App. 468, 472-473, 807 N.W.2d 56 (2011) (quotation marks and citations omitted).]
"Probable cause exists when the facts and circumstances known to the police officers at the time of the search would lead a reasonably prudent person to believe that a crime has been or is being committed and that evidence will be found in a particular place." People v. Beuschlein , 245 Mich.App. 744, 750, 630 N.W.2d 921 (2001).
A. AUTOMOBILE EXCEPTION
"An exception to the warrant requirement exists for searches of automobiles." People v. Levine , 461 Mich. 172, 179, 600 N.W.2d 622 (1999). Once again, however, "[t]he exception applies only to searches supported by probable cause." Id. "The determination whether probable cause exists to support a search, including a search of an automobile without a warrant, should be made in a commonsense manner in light of the totality of the circumstances." People v. Garvin , 235 Mich.App. 90, 102, 597 N.W.2d 194 (1999). "[T]he probable-cause *424 determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." United States v. Ross , 456 U.S. 798, 808, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982).
The question in this case is whether Morris, under the totality of the circumstances, had probable cause to believe that a crime had been or was being committed and that evidence of the crime would be found in the car. The prosecution relies heavily on People v. Kazmierczak , 461 Mich. 411, 605 N.W.2d 667 (2000), and argues that the totality of the circumstances revealed a fair probability that Morris would find evidence that defendant committed the crime of inhaling chemical agents in violation of MCL 752.272, as well as possession or use of controlled substances under MCL 333.7404(2)(b).
In Kazmierczak , the Michigan Supreme Court concluded that:
when a qualified person smells an odor sufficiently distinctive to identify contraband, the odor alone may provide probable cause to believe that contraband is present. Thus, the odor provides a "substantial basis" for inferring a "fair probability" that contraband or evidence of a crime will be found. Here, Officer Bordo testified that he had previous experience involving marijuana investigations and that he recognized "a very strong smell of marijuana emanating from the vehicle."
*369 The trial court found the officer's testimony to have been credible. Under such circumstances, probable cause to search for marijuana existed. [ Kazmierczak , 461 Mich. at 420-422, 605 N.W.2d 667 (citation omitted).]
Here, the prosecution argues that, like Bordo in Kazmierczak , Morris had probable cause to believe that a search of defendant's vehicle would reveal evidence of the crime of possession of a controlled *425 substance based on defendant's admission that he committed the crime of inhaling a chemical agent and based on Morris's observation of several nitrous oxide canisters and pill bottles on the vehicle's floorboard. However, Kazmierczak is distinguishable from the case at bar in a significant way-the possession of marijuana in Kazmierczak was a crime in and of itself, whereas defendant's possession of the nitrous oxide canisters and pill bottles was perfectly legal. The canisters did not form the basis for probable cause to search defendant's vehicle.
The prosecution argues, however, that the canisters along with defendant's admission provided probable cause for the search. Defendant admitted that he had inhaled nitrous oxide four before the traffic stop, and inhalation of a chemical agent is prohibited by MCL 752.272 :
No person shall, for the purpose of causing a condition of intoxication, euphoria, excitement, exhilaration, stupefaction or dulling of the senses or nervous system, intentionally smell or inhale the fumes of any chemical agent or intentionally drink, eat or otherwise introduce any chemical agent into his respiratory or circulatory system. This shall not prohibit the inhalation of any anesthesia for medical or dental purposes.
But defendant's statement could not form the basis for probable cause to search defendant's vehicle. The statute does not prohibit possessing nitrous oxide canisters; rather, it prohibits the misuse of the canisters. Therefore, the statute addresses intoxication and impairment. Morris never suspected that defendant was intoxicated or impaired when he pulled defendant over. Defendant had been speeding, but there was no testimony that he had been driving erratically. Nor did Morris suspect that defendant was intoxicated or impaired *426 when Morris spoke with defendant. This case would be entirely different had Morris observed defendant in an impaired state or suspected that defendant was in an impaired state. Instead, Morris believed that defendant's statement and the presence of the canisters created probable cause to believe that other controlled substances would be found.
B. ARREST AND INVENTORY SEARCH
"[A]n inventory search of a person in detention is constitutional if the underlying arrest was valid and the search was conducted by the police in accordance with standardized department procedures." People v. Houstina , 216 Mich.App. 70, 77, 549 N.W.2d 11 (1996). Such a search "is considered to be an administrative function rather than a part of a criminal investigation." Id.
The inventory exception to the warrant requirement does not apply because defendant's arrest was not valid.
A police officer may make an arrest without a warrant if there is probable cause to believe that a felony was committed by the defendant, or probable cause to believe that the defendant committed a misdemeanor in the officer's presence. "Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed."
*370 The standard is an objective one, applied without regard to the intent or motive of the police officer. [ People v. Chapo , 283 Mich.App. 360, 366-367, 770 N.W.2d 68 (2009) (citations omitted).]
MCL 764.15(1)(d) permits warrantless arrests for misdemeanors that occur outside an officer's presence when "[t]he peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days ... has been committed and reasonable cause to believe the person committed it." The prosecution *427 argues that Morris was entitled to arrest defendant for inhaling a chemical agent. A person who commits that crime "is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $100.00, or both." MCL 752.273. Yet, the fact remains that defendant was arrested for possession of codeine pills found as a result of an illegal search, not for inhaling nitrous oxide.
We find instructive this Court's recent opinion in People v. Mead (On Remand) , 320 Mich.App. 613, 908 N.W.2d 555 (2017). In Mead , a police officer stopped a driver for an expired license plate. Id. at 616, 908 N.W.2d 555. The driver subsequently consented to a search of the vehicle. Id . As part of that search, the officer opened a backpack belonging to defendant, who was a passenger in the car, and found methamphetamine. Id. The primary issue in the defendant's appeal was whether he had standing to challenge the search. This Court concluded that he did not. Id. at 615, 908 N.W.2d 555. However, the Michigan Supreme Court remanded the case back to this court for further consideration of the issue, along with an instruction that this Court consider " 'whether there are any other grounds upon which the search may be justified.' " Id . at 616, 908 N.W.2d at 555 (citation omitted). On remand, this Court ultimately concluded that defendant lacked standing to challenge the validity of the search. Id . at 616-618, 908 N.W.2d 555. For our purposes, however, the informative portion of the Court's decision was when it addressed whether there were other grounds justifying the search. This Court concluded that there were not. Specifically, it rejected the prosecution's claim that the arrest exception to the warrant requirement applied. The Court first noted:
"[T]here is no reason to believe that evidence relevant to the crime of arrest would be found in the vehicle" when *428 police are addressing "civil infractions" or a person "driving without a valid license." [ People v. Tavernier , 295 Mich.App. 582, 586 [815 N.W.2d 154 (2012). ]. "[J]ustifying the arrest by the search and at the same time the search by the arrest, just will not do." Smith v. Ohio , 494 U.S. 541, 543, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) (quotations, alterations, and citation omitted). For example, a "search of a container cannot be justified as being incident to an arrest if probable cause for the contemporaneous arrest was provided by the fruits of that search." People v. Champion , 452 Mich. 92, 116-117, 549 N.W.2d 849 (1996). [ Mead , 320 Mich.App. at 624, 908 N.W.2d 555.] .
With that in mind, the Court concluded that the police officer lacked probable cause to arrest the defendant:
In this case, Officer [Richard] Burkart did not search the backpack incident to the arrest of [the defendant] or [the driver]. Officer Burkart stopped the vehicle because of an expired license plate. It is unclear how the vehicle could contain evidence of an expired license plate. Officer Burkart repeatedly testified that he had no intent to arrest [the driver] for the infraction. Additionally, Officer Burkart testified that [the defendant] and [the driver] admitted to using narcotics.
*371 But he did not testify that drug use was the basis for the stop of the vehicle, that either admitted to possessing drugs that night, that either admitted using drugs that night, or that either exhibited signs of being under the influence of narcotics. Upon viewing the video of the traffic stop, it does not appear that [the driver] or [the defendant] are within reaching distance of the backpack or passenger compartment of the vehicle at the time of the search. Therefore, Officer Burkart lacked probable cause for a lawful arrest as is required to permit a search incident to arrest. [ Id .]
These facts are eerily similar to those before us. We see no reason to conclude differently.
Affirmed.
Stephens, P.J., concurred with K. F. Kelly, J.

These canisters are also commonly called "whip-its," "whippits," or "whipits." We use the "whippet" spelling in this opinion for consistency with the spelling used in the hearing transcript.